EDWARDS, Judge.
On November 4, 1983, the Louisiana Supreme Court granted writs and remanded the above matter to this court for briefing, argument, and a written opinion. 440 So.2d 745 (La.1983). This court had previously denied appellant’s request for supervisory writs. For the reasons stated below, we now grant appellant’s request for supervisory writs.
In 1973, defendant, Gregory Charles Le-Beouf, was indicted for the crime of second degree murder. He pled not guilty and not guilty by reason of insanity.
On May 31, 1974, a contradictory hearing as to LeBeouf’s sanity was held. Noting that “the matter of present sanity has already been submitted and passed on by the court” and that “the accused was presently sane,” Judge Daniel W. LeBlanc nevertheless permitted the defense to elicit testimony from Dr. Francisco Silva “for possible use at the trial or something regarding the matter of insanity at the time of the commission of the offense.” On conclusion of the hearing, when asked by the assistant district attorney, Frank Saia, whether the court would rule “on that today or are you taking it under advisement?”, Judge Le-Blanc answered, “I don’t rule on insanity at the time of the commission of the offense. The jury does.”
On July 12, 1974, with Michael Cava-naugh representing LeBeouf and assistant district attorney Alton Moran representing the State, the matter again came into court. The following colloquy took place:
“MR. CAVANAUGH: Your Honor, I had previously pled Mr. LeBouef, or he has pled himself, not guilty and not guilty by reason of insanity. We again tender his plea of not guilty by reason of insanity.
“MR. MORAN: The District Attorney’s office will accept this plea based on Dr. Silva’s report and the report of Dr. Steele that Mr. Cavanaugh will file as soon as it’s in proper form.”
“THE COURT: I wish I had some discretion in this matter.
“MR. CAVANAUGH: I understand that you will—
“THE COURT: I don’t have any now. He is charged with murder?
“MR. CAVANAUGH: Yes.”
*234 Judge LeBlanc then recited the provisions of LSA-C.Cr.P. Art. 654 regarding the possible commitment of a felon found not guilty by reason of insanity in a non-capital case and, noting the need for a contradictory hearing, scheduled same. Minutes of the trial court clearly verify that LeBeouf s plea was accepted by the State and that a further hearing was scheduled.
On July 26, 1974, pursuant to Judge Le-Blanc’s request, both counsel agreed to submit the matter of LeBeouf’s possible commitment based on reports previously rendered. Following that agreement, the court found LeBeouf dangerous to himself and others and ordered him committed until safe.
In 1978, LeBeouf sought release through various sanity proceedings which were successfully opposed by the State.
In 1982, LeBeouf again sought release. After hearing testimony, Judge Michael E. Ponder found that, despite being dangerous, uncontroverted medical testimony established that LeBeouf was not mentally ill and was entitled to be released. Judge Ponder noted, in ordering LeBeouf’s release, that
“where the plea of not guilty by reason of insanity was offered and accepted by the District Attorney’s Office, and accepted by the trial judge of that matter, it may have been convenient under the circumstances there, it has now come back to haunt both the District Attorney’s Office, the — uh—trial judge, I assume, and perhaps even society in the long run.”
Objecting to LeBeouf’s release, the State sought supervisory writs which were granted by this court on February 7, 1983, Case No. 83 KH 0095. This court, noting LeBeouf was not an acquitee and had not been subjected to jeopardy, ordered the defendant transferred to prison and remanded the matter to the district court for trial.
Subsequent to our remand, LeBeouf filed a motion to quash the indictment on the ground of double jeopardy. At a hearing held April 15, 1983, transcripts of the 1974 hearings were introduced into evidence and the testimony of Judge LeBlanc, Michael Cavanaugh, and Alton Moran was taken.
A careful review of both the 1974 transcripts and the testimony taken April 15, 1983, reveals that, beyond all doubt, the State, as per its custom at that time, accepted LeBeouf’s plea of not guilty by reason of insanity and that all parties, including Judge LeBlanc, believed that a valid verdict had been reached and that LeBeouf had faced conviction consequences which included the possibility of being incarcerated in a mental institution for the rest of his life.
On May 6, 1983, Judge Ponder ruled on LeBeouf’s motion to quash. Noting that LeBeouf’s plea had been accepted and that he, as well as those testifying on April 15, 1983, believed the matter closed, Judge Ponder nevertheless cited this court’s February 7, 1983, ruling as controlling and denied the motion to quash.
From that denial, LeBeouf sought supervisory writs which were denied by this court on July 21, 1983, Cáse No. 83 KW 0692. Our denial of writs stated:
“WRIT DENIED: The testimony of defendant’s expert witness at the continuation of the sanity commission hearing to determine the capacity of defendant to proceed at trial did not cause jeopardy to attach. The witness was allowed to testify as a courtesy to defendant and was in the nature of a discovery device. As the trial judge properly noticed, the issue of insanity at the time of the offense was a question for the jury, the right to which defendant did not waive. The trial judge made no determination as to a factual basis for defendant’s plea.
“The alleged plea bargain nature of defendant’s plea did not cause jeopardy to attach. The proceedings and sentence were void ab initio. See State v. Leonard, 394 So.2d 1214 (La.1981). Moreover, we note that no detrimental reliance has been urged by defendant.”
LeBeouf proceeded to seek supervisory writs from the Louisiana Supreme Court, *235 Case No. 83-KK-1877. On November 4, 1983, the Supreme Court granted writs and remanded the case to us.
A searching review of the entire record convinces us that our previous denial of writs was erroneous. While Judge Le-Blanc did note, on May 31, 1974, that the jury, and not he, would rule on insanity at the time of the offense, any need for such a ruling was obviated on July 12, 1974, when the State clearly accepted LeBeouf’s plea of not guilty by reason of insanity. The trial court’s minutes reflect as much.
From the moment the State accepted Le-Beouf s plea, any sanity hearings or psychiatric evidence dealt not with defendant’s capacity to stand trial, which was now precluded, but with defendant’s need to be incarcerated for the treatment or not.
Our previous reliance on State v. Leonard, supra, was misplaced. In Leonard, the defendant was ultimately required to stand trial because there had been no plea bargain. In the present case, not only did the defendant and State agree to a plea, but the defendant faced possible conviction consequences and in fact was incarcerated in a mental hospital for nine years, until the State had no further legal basis to so incarcerate him as being mentally ill.
Essentially, the State urges that because LSA-C.Cr.P. Art. 558.1, which permits trial courts to find defendants not guilty by reason of insanity without trial, was not enacted until 1983, the trial court could not and did not try LeBeouf and had no authority to find him not guilty by reason of insanity. Hence, the nine years of incarceration endured by LeBeouf is meaningless and LeBeouf may be tried.
We note that the trial court did not find LeBeouf guilty or not guilty. Rather, the State stipulated that LeBeouf was not guilty by reason of insanity and the court did not sentence LeBeouf but ordered him incarcerated for treatment. We cannot permit the State to agree to a plea bargain, allow the defendant to face and endure nine years of conviction consequences, and then deny the plea bargain. The State’s arguments are, at best, disingenuous and the State is estopped to deny its own agreement.
For the reasons stated hereinabove, defendant’s application for supervisory writs is granted. The indictment is hereby ordered quashed and Gregory Charles Le-Beouf is ordered released from custody.
WRIT GRANTED. INDICTMENT QUASHED AND DEFENDANT ORDERED RELEASED FROM CUSTODY.